UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARROWOOD INDEMNITY COMPANY
f/k/a Royal Indemnity Company,

               Plaintiff,

v.

                                         Case Number 13-13938

                                         Honorable David M. Lawson

THE CITY OF WARREN, MICHIGAN,
PATRICK MCQUEENEY, as Personal
Representative of the Estate of Donald
Ingles, and MICHAEL L. CRISTINI,

               Defendants.

and

MICHAEL L. CRISTINI,

               Counter-plaintiff and
               Third-party Plaintiff

v.

ARROWOOD INDEMNITY COMPANY
f/k/a Royal Indemnity Company,

               Counter-defendant,

and

U.S. FIRE INSURANCE CO.,

               Third-party Defendant.

_____/

**OPINION AND ORDER GRANTING MOTIONS TO DISMISS, DISMISSING
REMAINING CLAIMS WITH PREJUDICE, DISMISSING PENDING
DISCOVERY MOTIONS AS MOOT, AND CLOSING CASE**

The question presented by the motions to dismiss in this case is whether the insurance companies' hardball negotiation tactics used in the settlement discussions with counter-plaintiff Michael Cristini could amount to fraudulent conduct. The answer, at least in part, is "yes." However, Cristini's allegation that he made his decision to settle his case in reliance on the insurers' false statements about their intention to contribute to the pool of settlement funds, when the insured defendant was readily collectable itself, is not plausible. Therefore, the well-pleaded allegations in Cristini's counter and third-party complaint do not state viable claims of fraud and civil conspiracy. Therefore, I will grant the insurance companies' motions to dismiss, dismiss the remaining claims in this case, and dismiss the pending discovery motions as moot.

I.

According to Michael Cristini's counter and third-party complaint, counter-defendant Arrowood Indemnity Company and third-party defendant U.S. Fire Insurance Company (USFIC) wrote liability insurance policies covering the City of Warren, one of the defendants in a lawsuit Cristini brought for a civil rights violation. In that underlying case, Cristini alleged that the Warren police department withheld exculpatory evidence, resulting in convictions of Cristini and Jeffrey Moldowan for a rape they say they did not commit. Both convictions were overturned, and Cristini and Moldowan were subsequently retried and acquitted, but not before they spent over twelve years behind bars.

Cristini and Moldowan each filed separate lawsuits against the City of Warren and police detective Donald Ingles ("Warren defendants"), among others, for the violation of their civil rights. During discovery, the Warren defendants revealed that they had insurance policies from USFIC and Arrowood that provided potential coverage for their claims. Because of some procedural

entanglements, Moldowan's case proceeded on a faster track than Cristini's.  The parties in that matter engaged in robust settlement discussions, which led to a settlement agreement.

The Warren defendants disclosed during the Moldowan settlement discussions that both USFIC and Arrowood were actively participating in efforts to settle the case.  In October 2011, the Warren defendants settled with Mr. Moldowan for approximately $2.8 million.  Both USFIC and Arrowood contributed to the settlement.

Thereafter, a stay that had been entered in Cristini's case was lifted.  In September 2011, Arrowood retained additional counsel to assist the City of Warren in its defense against Cristini's claims.

Cristini alleges that on July 18, 2013, counsel for the Warren defendants advised Cristini that its insurer Arrowood was denying coverage for Cristini's claims and would refuse to contribute to or participate in any potential settlement.  Counsel for the Warren defendants also conveyed to Cristini that Arrowood would withdraw its counsel assisting the Warren defendants' defense. Arrowood then filed the present case, styled as a declaratory judgment action against the City of Warren, asking the Court to declare that its policy did not cover Cristini's civil rights claims. Arrowood also took the position that it somehow was entitled to recover the funds it had contributed to the Moldowan settlement.

Between October and November 7, 2013, Cristini alleges, the Warren defendants informed him that the insurance coverage available in the Moldowan suit was not available to settle Cristini's claims because Arrowood refused to contribute to any settlement.  On November 7, 2013, counsel for Cristini memorialized in writing its understanding that "there is no longer the same amount of insurance coverage as there was in the Moldowan case."  Cristini then made a settlement demand

-3-

for $2.8 million (which matched the Moldowan settlement amount), which apparently exceeded the amount of insurance coverage Warren said was available at the time.

On November 12, 2013, the parties appeared before the Court for a status conference attended by counsel for Cristini and the Warren defendants. Cristini alleges that during the status conference, counsel for the Warren defendants stated that they would not consider any settlement demand by Cristini unless the demand was within their insurance policy limit. Cristini demanded to know that limit. Counsel for the Warren defendants represented that $2.32 million would exhaust coverage limits, all of that apparently coming from the USFIC policy, since Arrowood refused to contribute any amount to the settlement. The City took the position that it would not contribute any municipal assets to a settlement.

In response, Cristini made a settlement demand on November 14, 2013 that would have required a consent judgment against Warren in the amount of $5.5 million, with an agreement that Cristini would not attempt to collect more than $2.32 million from the Warren defendants, apparently agreeing to take an assignment of the city's potential claim against Arrowood under the insurance policy.

On December 3, 2013, the parties again appeared before the Court for a status conference. Cristini alleges that during the conference, counsel for the Warren defendants said that they would not entertain a settlement demand above $2.32 million or consider a consent judgment that exceeded its coverage. They reiterated that the maximum available insurance was $2.32 million because Arrowood would not participate in any settlement.

-4-

On December 12, 2013, Cristini made a settlement demand of $2.32 million. Counsel for the Warren defendants confirmed receipt that day and indicated that they "already communicated [the demand] to the necessary *carrier* and our clients." Counter compl. at ¶ 39.

On December 13, 2013, counsel for the Warren defendants rejected the settlement demand in a letter stating:

> I have just concluded a lengthy telephone conference with representatives of the City of Warren and US Fire. As a result of that conference, I have been asked to restate to you our belief that the entire cause of action set forth on behalf of the plaintiff is barred by the applicable statute of limitations. Additionally, we believe that it will be extremely difficult for the plaintiff to meet his burden of proof on the two remaining claims, *Brady* and failure to train. US Fire has also asked me to advise you that they are resolute in their willingness to proceed to trial. With that, I have been instructed to reject your most recent settlement demand of $2,320,000.00. I have been advised that there will be no counter-offer from defendants until the demand of plaintiff is much more reasonable.

Counter compl. at ¶ 40.

On December 18, 2013, the parties appeared before the Court for a final pretrial conference, preparing for a trial that was to commence in early January 2014. Additional negotiations occurred over the next week, and I ordered the parties back to court on December 27, 2013. A settlement was reached that day, and the parties outlined on the record their agreement to settle the case for $1.5 million.

Following the settlement, counsel for the Warren defendants circulated a draft release. According to Cristini, the draft revealed that Arrowood would contribute $500,000 to the Cristini settlement. That came as a surprise to Cristini, in light of previous representations by counsel for the Warren defendants about Arrowood's intransigence.

On February 12, 2014, Cristini filed an eight-count counterclaim and third-party claim against Arrowood and USFIC for fraud, silent fraud, conspiracy to commit fraud, and negligent

misrepresentation. He accused the insurers of acting in concert to induce him to settle his claim for an amount substantially less than its value.

Arrowood and the Warren defendants eventually resolved the claims against one another, including Arrowood's attempt to recover funds from the Moldowan settlement. Those claim have been dismissed. The only claims remaining in this case come from Cristini against the insurers. In his counter and third-party complaint, he alleges fraud as to Arrowood (count I), fraud as to USFIC (count II), civil conspiracy to commit fraud against both insurers (count III), silent fraud as to Arrowood (count IV), silent fraud as to USFIC (count V), civil conspiracy to commit silent fraud against both insurers (count VI), negligent misrepresentation as to Arrowood (count VII), and negligent misrepresentation as to USFIC (count VIII).

Arrowood and USFIC each filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). They also argue that the fraud allegations do not satisfy the heightened pleading requirements of Rule 9(b). The Court heard oral argument on June 17, 2014.

## II.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997) (quoting

*Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki*

*v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010).  Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335-36.  If the plaintiff does not directly refer to a document in the pleadings, but that document governs the plaintiff's rights and is necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be considered without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not its associated documents).  In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36).

## A.  Fraud claims

The insurer defendants argue that Cristini's fraud claims are defective in several respects. Both sides agree on the essential elements: "'(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.'" *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813,

815-16 (1976) (quoting *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141, 143 (1919)). The insurers contend, however, that Cristini did not touch all the bases in his complaint, and the allegations he did make are not specific enough to satisfy Federal Rule of Civil Procedure 9(b). USFIC also argues another procedural technicality: that it is not a proper third-party defendant under Rule 14 because Cristini has not alleged that USFIC is liable for all or part of a claim asserted by another party against Cristini.

### 1. Statements

A party must allege "the circumstances constituting fraud" "with particularity." Fed. R. Civ. P. 9(b). That generally means that the party must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (quotation marks and citation omitted). The insurers argue that Cristini's allegations are too general, because he did not identify the person who made the false statement. The Court disagrees. Cristini's pleading is sufficient to identify the fraudulent scheme "with particularity."

Cristini alleged that on July 18, 2013, counsel for the Warren defendants advised him that Arrowood was denying coverage for Cristini's claim and would refuse to participate in any potential settlement. Cristini also alleged that counsel for the Warren defendants represented on November 12, 2013 that Arrowood would not contribute any funds to settle the case, and the only insurance proceeds available were $2.32 million, which was the maximum coverage available from USFIC. Cristini alleged that counsel for the Warren defendants stated on December 3, 2013 that its clients would not entertain a settlement demand that exceeded the available insurance coverage of $2.32

-9-

million.  And Cristini alleged that on December 12, 2013, counsel for the Warren defendants implied in writing that only one carrier was participating in settlement discussions.  Cristini alleged that these representations were fraudulent because Arrowood actually contributed to the settlement, participated in settlement negotiations, and additional funds were available under Arrowood's insurance policy.  Those allegations describe in adequate detail the date, location, and content of the alleged fraudulent statements.  They allege that Arrowood and USFIC engaged in an elaborate ruse to lead Cristini's lawyers to believe that Arrowood was taking a hard line on settlement and would not contribute any of its insurance policy proceeds to fund a settlement package, while all the while it intended to help USFIC resolve the matter.  Cristini alleged that Arrowwood said one thing but did another, all with USFIC's blessing, in order to deceive Cristini.  That is sufficient under Rule 9(b).

Moreover, "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8."  *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) (quoting *Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)).  "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct."  *Ibid.*  "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud."  *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (internal citations omitted).  Cristini's pleadings provided adequate notice.

-10-

The insurers also argue that Cristini's fraud allegations are defective because he did not allege any direct communications between Cristini and Arrowood. That argument is meritless. "It is generally accepted that a plaintiff is not required to prove direct reliance on a fraudulent misrepresentation to state a claim for fraud." *Nernberg v. Pearce*, 35 F.3d 247, 250 (6th Cir. 1994); *see also Bearden v. Honeywell Int'l Inc.*, 3:09-1035, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) ("In certain circumstances, a plaintiff may recover for fraud even if the defendant's allegedly fraudulent statement was not made directly to him or her."). Indeed, the Michigan Court of Appeals has plainly stated that a "fraud claimant may rely upon misrepresentations made by a defendant to a third party with the intent to induce reliance by the claimant." *Mercer v. Jaffer, Snider, Raitt & Heuer, P.C.*, 713 F. Supp. 1019, 1028 (W.D. Mich. 1989) (citing *Cormack v. American Underwriters Corp.*, 94 Mich. App. 379, 288 N.W.2d 634, 637 (1979)). "In such cases, the third party stands as a conduit of the misrepresentations." *Ibid.* Michigan courts have "repeatedly held that where a party makes false representations to another with the *intent or knowledge* that they be *exhibited or repeated* to a third party for the purpose of deceiving him, the third party, if so deceived to his injury, can maintain an action in tort against the party making the false statements for the damages resulting from the fraud." *Opperhuizen v. Wennersten*, 2 Mich. App. 288, 294, 139 N.W.2d 765, 768 (1966) (internal quotations and citations omitted). Cristini plausibly has alleged that the insurers made the representations about insurance coverage with the intention of inducing Cristini to settle his case for an amount substantially less than its value.

## 2. Reliance

To make out a fraud claim, a plaintiff must not only allege that he relied on a false representation, but he also must show that his reliance was reasonable. *Zaremba Equip., Inc. v.*

*Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 39, 761 N.W.2d 151, 165 (2008) (observing that Michigan courts have "frequently reiterated that, to sustain a fraud claim, the party claiming fraud must *reasonably* rely on the material misrepresentation"); *see also Foreman v. Foreman*, 266 Mich. App. 132, 141-42, 701 N.W.2d 167, 175 (2005) (holding that the plaintiff had to "show that any reliance on defendant's representations was reasonable"); *Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 464, 517 N.W.2d 235, 238 (1994) ("A misrepresentation claim requires reasonable reliance on a false representation.") (citing *State-William Partnership v. Gale,* 169 Mich. App. 170, 425 N.W.2d 756 (1988)).  The determination whether a plaintiff's alleged reliance was reasonable can be made "at the pleading stage and without discovery." *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 664 (6th Cir. 2013) (citing *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 599 N.W.2d 546, 553-54 (1999)).

Reliance on a false statement generally is deemed unreasonable when the fraud victim has information on his own that establishes the falsity of the representation. *Montgomery Ward & Co. v. Williams*, 330 Mich. 275, 284, 47 N.W.2d 607, 611 (1951) (holding that fraud cannot be "perpetrated upon one who has full knowledge to the contrary of a representation").  In the case of disputed insurance coverage, "when the insurer has made a statement that clearly conflicts with the terms of the insurance policy, an insured cannot argue that he or she reasonably relied on that statement without questioning it in light of the provisions of the policy." *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 414-15, 751 N.W.2d 443, 451-52 (2008).  But when the representations deal with something other than the contract terms, such as "information and facts that are exclusively or primarily within the insurers' perceived 'expertise' in insurance matters, or facts obtained by the insurer[s] in the course of [their] investigation, and unknown to the insureds, the insureds can more

-12-

reasonably argue that they relied on the insurers' misrepresentations." *Id.* at 415-16, 751 N.W.2d at 452 (internal citations omitted).

The insurers in this case argue that Cristini had the insurance policies in his possession at least three months before he negotiated the settlement, so he could make his own assessment of Arrowood's coverage position and evaluate its posturing. They contend, therefore, that reliance on Arrowood's statement that it did not intend to participate in any effort to fund a settlement was not reasonable.

That argument would make sense if the thrust of Cristini's complaint focused on the validity of the insurance coverage under Arrowood's policy. After all, the parties were in full scale combat over that issue, with Arrowood even taking the preposterous position that it was entitled to recover from the City of Warren the funds it contributed to the Moldowan settlement. Cristini scoffed at Arrowood's posturing, and the parties' motion papers establish — conclusively — that Cristini did not accept Arrowood's interpretation of the available coverage. "It is difficult, if not impossible, for a party to establish reasonable reliance on representations made by the other party when the parties are 'in an obvious adversarial position and generally deal with each other at arm's length.'" *Niell v. Schmoke*, 302389, 2012 WL 6604727, at *7 (Mich. Ct. App. Dec. 18, 2012) (quoting *Cooper*, 481 Mich. at 415, 751 N.W.2d at 452). Cristini's reliance on Arrowood's representation of its own conception of its legal obligations under the insurance policy would not have been reasonable.

But that is not the only way to read Cristini's pleadings. It is quite clear that Cristini does not allege that he relied on Arrowood's *interpretation* of the insurance policy. His counter-complaint is based on Arrowood's representation that it would not *participate* in or *contribute* to the

-13-

final settlement.  Those allegations have nothing to do with interpreting the insurance coverage under the written documents.  According to Cristini, the insurers' representations led him to believe that the upper limit of the settlement window was the amount of insurance on the table, which was USFIC's policy limits; that USFIC would carry the full burden of funding the settlement; and that Arrowood had no intention of helping to carry that weight.  Thus, says Cristini, the insurers' representations set the tone for settlement discussions, causing Cristini to make settlement demands and ultimately to settle the case for far less than he might have otherwise.

But even with that understanding, was it *reasonable* for Cristini to rely on Arrowood's false representation when making his decision to settle his case for $1.5 million?  To show that it was, Cristini cites *Slotkin v. Citizens Casualty Co. of New York*, 614 F.2d 301 (2d Cir. 1979), a case in which the Second Circuit upheld a fraud claim by a malpractice plaintiff who settled a case against a hospital mid-trial for $180,000 when the defendants (including the primary insurer) represented coverage limits as $200,000 and concealed a $1 million excess policy.  The court did not discuss reasonable reliance in that case.  But it did begin its opinion by stating: "Any personal injuries lawyer knows that the amount of a defendant's assets or insurance coverage is generally a factor to be weighed in evaluating a case for settlement." *Id.* at 303.  That certainly is true.  However, where the defendant — here, the City of Warren — is readily collectable, how weighty a factor could have been Arrowood's misrepresentation about its intention to participate in funding a settlement?

Cristini, with advice from his lawyers, made the decision to settle his case for $1.5 million, knowing that he could take his case to trial and possibly recover substantially more.  If he did win a larger verdict, he knew that USFIC's policy would pay up to $2.32 million on a judgment in his favor, and any amount beyond that could be recovered from the city's assets.  If no assets were

-14-

available, then he could enroll the judgment, which would be paid from the city's tax receipts. *See* Mich. Comp. Laws § 600.6093(1). And if Cristini wanted to press the point of Arrowood's coverage position, he could have proceeded to trial, obtained a judgment in excess of USFIC's coverage, garnisheed Arrowood's policy, and litigated the question.

In light of these circumstances, it strains the imagination to posit that Cristini's reliance on the participation of one of several funding sources would have been pivotal to his decision to accept $1.5 million and forego the trial of his case. If Arrowood's policy was the only potential source to fund a settlement, the question would be materially different. The *Slotkin* court noted that the funds available are an important factor to be weighed in the settlement calculus; but it acknowledged that those funds can consist of "a defendant's assets *or* insurance coverage." *Slotkin*, 614 F.2d at 303 (emphasis added). Arrowood's lie about its intention to contribute or not to the substantial pool of assets, abetted by USFIC, may have been a despicable negotiating tactic. But Cristini's reliance on the source of funds when making his decision to settle for the amount he accepted was not reasonable, when he knew that more money was available to fund a settlement or verdict even without Arrowood's contribution. Cristini's pleadings, therefore, do not plausibly allege the element of reasonable reliance to support his fraud claim.

### 3. Injury

Next, the insurers argue that Cristini did not suffer any injury as a result of the alleged misrepresentations because he settled his lawsuit for $1.5 million, $800,000 less than the $2.32 million in coverage he believed was available. That argument ignores the allegations in Cristini's counter-complaint that he settled his case for less than its perceived value because he used the insurance caps to evaluate the extent of his compromise. Counterclaim and Third-Party Claim ¶¶

-15-

61, 68, 75, 108, 117. The Court has determined that reliance on the insurers' misrepresentations was not reasonable under all the circumstances discussed above. However, Cristini has adequately alleged an injury to satisfy that element of his fraud claims.

## B.  Silent fraud

"'Silent fraud is essentially the same [as fraudulent misrepresentation] except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation.'" *Tooco v. Richman Greer Professional Ass'n*, 553 F. App'x 473, 476 (6th Cir. 2013) (quoting *Alfieri v. Bertorelli*, 295 Mich. App. 189, 813 N.W.2d 772, 775 (2012)); *see also Compuware Corp. v. Moody's Investors Servs.*, 273 F. Supp. 2d 914, 915-16 (E.D. Mich. 2002) ("Under Michigan law, to make a claim for 'silent fraud,' the plaintiff must show that the defendant had a duty to disclose. Mere nondisclosure is insufficient.") (internal citations omitted). To plead a claim for silent fraud, a plaintiff must allege (1) a pre-existing legal or equitable duty to disclose; (2) suppression of information with the intent to defraud; (3) reasonable reliance upon defendant's performance of the duty; and (4) damages caused by the suppression of the information. *Tooco*, 553 F. App'x at 476. "[A] legal duty to make a disclosure arises 'most commonly in a situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information.'" *MacDonald*, 724 F.3d at 666 (quoting *Hord v. Envtl. Research Inst. of Mich.*, 463 Mich. 399, 617 N.W.2d 543, 550 (2000)).

Arrowood argues that Cristini failed to plead that he made an inquiry of Arrowood to which Arrowood made an incomplete response, omitted information, or lied. Arrowood is incorrect. Cristini alleged that Arrowood failed to disclose that it intended to contribute to the Cristini

-16-

settlement after representing that it would not participate in the settlement.  He also alleged that on November 12, 2013, he asked counsel for the Warren defendants the maximum amount of coverage available to which counsel for the Warren defendants replied, "$2.32 million."  As discussed already, a "fraud claimant may rely upon misrepresentations made by a defendant to a third party with the intent to induce reliance by the claimant." *Mercer v. Jaffer, Snider, Raitt & Heuer, P.C.*, 713 F. Supp. 1019, 1028 (W.D. Mich. 1989) (citing *Cormack v. American Underwriters Corp.*, 94 Mich. App. 379, 288 N.W.2d 634, 637 (1979)).  "In such cases, the third party stands as a conduit of the misrepresentations." *Ibid.*

But Cristini's silent fraud claim suffers from two fatal defects: the lack of reasonable reliance; and the absence of a duty on the insurers' part to come forward with additional information. The element of reasonable reliance was discussed above.  Those same deficiencies that relate to the fraud claims apply equally to the silent fraud counts.  Cristini bases his argument about the insurers' duty to disclose on the Michigan Uniform Trade Practices Act and sections of the Michigan Insurance Code.  Those statutes do not help him in this case.

It is true that the Uniform Trade Practices Act prohibits an insurer from "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue."  Mich. Comp. Laws § 500.2026(1)(a).  But that statute by its terms deals with "a course of conduct" and does not address "isolated incidents." *Ibid.*  Moreover, the misrepresentation mentioned in the Act is generally thought to refer to statements by an insurer to its own insured about the extent of coverage under its policy. *See Buntea v. State Farm Mut. Auto Ins. Co.*, 467 F. Supp. 2d 740, 746 (E.D. Mich. 2006) (holding that the Uniform Trade Practices Act "creates, among others, a statutory duty on insurance

-17-

carriers not to misrepresent benefits to policy holders . . . [which] would arise if an insured asked her insurance carrier the extent of her benefits, and the insurer gave an incomplete answer").

Cristini's pleadings do not adequately plead claims based on silent fraud by the tortfeasors' insurers.

### C.  Civil conspiracy

A civil conspiracy is "a combination of two or more persons, [who] by some concerted action, [agree] to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 313, 486 N.W.2d 351 (1992); *see also Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999); *Fenestra Inc. v. Gulf American Land Corp.*, 377 Mich. 565, 593, 141 N.W.2d 36, 48 (1966). "However, a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Early Detection Ctr., PC v. New York Life Ins. Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 830, 836 (1986); *see also Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 483 (6th Cir. 2014); *Collins v. Wickersham*, 862 F. Supp. 2d 649, 660 (E.D. Mich. 2012).

For reasons discussed above, Cristini has not pleaded viable intentional torts against the two insurance companies.  Therefore, his conspiracy claims must fail as well.

### D.  Negligent misrepresentation

The elements of negligent misrepresentation are: (1) the plaintiff's justifiable and detrimental reliance on (2) information provided without reasonable care (3) by one who owed the party who relied a duty of care.  *Law Offices of Lawrence J. Stockler v Rose*, 174 Mich. App. 14, 33, 436 N.W.2d 70 (1989).  "Silent fraud and negligent misrepresentation both require a defendant to owe

a duty to the plaintiff." *Alfieri v. Bertorelli*, 295 Mich. App. 189, 194, 813 N.W.2d 772, 775 (2012).

Cristini's negligent misrepresentation claims suffer from the same defects as his silent fraud claim: he has not pleaded adequately the elements of reasonable reliance and that the insurers owed him a duty within the scope of Michigan Compiled Laws sections 500.2026(1)(a) and (b).

### E.  Mitigation of damages

USFIC argues that Cristini cannot state a claim because he failed to mitigate his damages by voiding the settlement.  That argument has no merit.

"Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing." *Morris v. Clawson Tank Co.*, 459 Mich. 256, 263, 587 N.W.2d 253, 257 (1998) (quoting *Shiffer v. Gibraltar School Dist. Bd. of Ed.*, 393 Mich. 190, 197, 224 N.W.2d 255 (1974)). "Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages." *Ibid.* (internal quotation marks omitted).  "The person wronged cannot recover for any item of damage which could thus have been avoided." *Ibid.*  An "injured party must make every reasonable effort to minimize damages suffered." *Williams v. American Title Ins. Co.*, 83 Mich. App. 686, 697, 269 N.W.2d 481, 486 (1978).

Nonetheless, mitigation of damages is an affirmative defense that a plaintiff is not required to avoid in his complaint. *Mercer v. Jaffe, Snider, Raitt & Heuer*, 730 F. Supp. 74, 77 (W.D. Mich. 1990) (holding that "[a]s a general proposition, plaintiffs are not required to plead mitigation of damages, which is usually regarded as an affirmative defense"); *see also TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 550 (6th Cir. 1981) ("The failure to mitigate damages is an affirmative

defense, with the burden upon the defendant to show in mitigation of the damages claimed that the plaintiff has not used every reasonable effort within his power so to minimize his damages." (internal citations omitted)); *Fothergill v. McKay Press*, 374 Mich. 138, 140, 132 N.W.2d 144, 145 (1965) ("The failure to mitigate damages is an affirmative defense and the burden of proof is upon defendant."). "'[C]ourts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings.'" *Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (quoting *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012)).

Moreover, a plaintiff is only required to take reasonable steps to mitigate his damages. *Morris*, 459 Mich. at 264, 587 N.W.2d at 257 ("It would be inappropriate to require [a plaintiff] to make *all* efforts to eliminate the economic damages resulting from the wrongdoing. Rather, he is only required to make efforts that are reasonable under the circumstances") (citing *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 124 517 N.W.2d 19 (1994)). Whether or not a plaintiff is reasonable in mitigating damages is a question of fact, not law. *Higgins v. Lawrence*, 107 Mich. App. 178, 182, 302 N.W.2d 194, 196 (1981) (citations omitted).

In *Slotkin v. Citizens Casualty Company of New York*, the Second Circuit held that it would be unreasonable to require the plaintiffs — who accused several insurers of fraudulently inducing a settlement — to void their settlement and incur the risk of trial. 614 F.2d at 313. The mitigation doctrine was no bar; the court reasoned:

> If the effort, risk, sacrifice, or expense which the person wronged must incur in order to avoid or minimize a loss or injury is such that under all the circumstances a reasonable man might well decline to incur it, a failure to do so imposes no disability against recovering full damages.

*Ibid.* (quoting C. McCormick, Handbook on the Law of Damages § 35 (1935)).  The court found that another trial would further prejudice the plaintiffs because they had already eliminated the risk from the first trial by settling.  *Ibid.*

The same rationale would apply here.  Cristini eliminated the risk of trial through settlement.  It would prejudice Cristini to require him to reassume that risk — and the possibility of an unfavorable verdict — because of the insurers' fraudulent actions.  *See also Cresswell v. Sullivan & Cromwell*, 668 F. Supp. 166, 171 (S.D.N.Y. 1987) (If a plaintiff were required to void their settlement, "few plaintiffs would choose to enforce their claims of fraud in connection with a settlement, no matter how valid their cause of action.  A plaintiff who must give up any benefit he has gained and risk receiving nothing in return will be reluctant to enforce his rights as a victim of fraud.").  It would be unreasonable to require Cristini to mitigate his damages by voiding the settlement.

### F.  Election of remedies

In a related argument, the insurers insist that Cristini cannot pursue fraud claims without first renouncing the settlement and returning the settlement funds.  In essence, the insurers contend that Cristini must choose to accept the settlement and live with the fraud, or give up the settlement proceeds and take his chances at a trial.  That may be true where the tortfeasor and the fraudster are one and the same.  Here, however, Cristini is not accusing the Warren defendants of complicity in the fraudulent scheme.  He points a finger at their insurers, who orchestrated the settlement circumstances.

The purpose of the election of remedies doctrine is not to prevent recourse to alternate remedies, but to prevent double redress for a single injury.  *Riverview Co-op., Inc. v. First Nat. Bank*

-21-

*& Trust Co. of Michigan*, 417 Mich. 307, 312-13, 337 N.W.2d 225, 226-27 (1983) (citing Dobbs,

Remedies, § 1.5, p. 15)).  The election of remedies doctrine applies only if three prerequisites are

satisfied: "(1) the existence of two or more remedies; (2) the inconsistency between such remedies;

and (3) a choice of one of them."  *Id.* at 313, 337 N.W.2d at 227 (quoting *Ielmini v. Bessemer*

*National Bank*, 298 Mich. 59, 66-67, 298 N.W. 404, 407 (1941)).  If any of the elements is absent,

the result of preclusion does not follow.  *Ibid.*  As with mitigation of damages, election of remedies

is an affirmative defense.  *H.G. Vogel v. Original Cabinet Corp.*, 252 Mich. 129, 133, 233 N.W.

200, 201 (1930).

In *Kordis v. Auto Owners Ins. Co.*, 311 Mich. 247, 18 N.W.2d 811 (1945), the Michigan

Supreme Court held that the doctrine of election of remedies did not apply to a plaintiff that accused

an insurance company of fraudulently inducing a settlement.  The plaintiff was permanently disabled

after a negligent driver hit the plaintiff while he walked on a public highway.  *Id.* at 249, 18 N.W.2d

at 812.  The plaintiff filed a lawsuit against the driver's insurance company several months later after

it fraudulently induced the plaintiff to settle his claims for $2,000, well below the policy limit of

$10,000.  *Id.* at 249-50, 18 N.W.2d at 812.  The plaintiff accused the insurer of falsely representing

that the plaintiff did not have a permanent disability and would be able to return to work shortly, the

plaintiff had to accept the offer immediately or he would not recover anything, and the insurance

coverage was limited to $2,000.  *Id.* at 249, 18 N.W.2d at 812. After discovering that the

representations were fraudulent, the plaintiff filed a lawsuit against the insurance company, which

moved to dismiss because the plaintiff did not tender back the $2,000 or offer to rescind the

settlement.  *Id.* at 250, 18 N.W.2d at 812.  The Michigan Supreme Court held that a plaintiff that

accuses a third-party insurance company of fraud "has the option of rescinding the transaction

-22-

consummated by fraud and proceeding to recover; or the injured party may waive his right to rescind and sue to recover such damages as he may have suffered in consequence of the fraud perpetrated upon him." *Id.* at 251, 18 N.W.2d at 812-13. Further, the court held that tender back of the settlement money was not required. *Id.* at 251-52, 18 N.W.2d at 813. The court reasoned that the plaintiff did not seek to recover damages for injuries caused by the automobile accident, but for the independent injuries he suffered from the insurer's fraud and deceit. *Id.* at 250, 18 N.W.2d at 812.

The insurers argue here that the Michigan Supreme Court has not applied or extended *Kordis* in sixty years. They also point out that the Michigan Supreme Court has held that a plaintiff may not sue a party to an underlying tort case for fraudulently inducing a settlement without rescinding the settlement. *See Triplett v. St. Amour*, 444 Mich. 170, 175-76, 507 N.W.2d 194, 197 (1993) (plaintiff, who was the defendant in the original tort action, may not sue the plaintiff in the original tort action for fraudulently inducing a settlement without rescinding the settlement agreement); *see also Dresden v. Detroit Macomb Hosp. Corp.*, 218 Mich. App. 292, 298-99, 553 N.W.2d 387, 391 (1996) (plaintiff in the underlying tort action could not sue the defendant in the original tort action for fraudulently inducing a settlement without rescinding the settlement). But despite multiple opportunities, the Michigan Supreme Court has never overruled *Kordis*. "*Kordis* is still viable precedent" and a plaintiff may continue to sue a third-party insurer for fraudulently inducing a settlement. *Triplett*, 444 Mich. at 182, 507 N.W.2d at 199 (Riley, J., concurring in part and dissenting in part); *see also Matsuura v. Alston & Bird*, 166 F.3d 1006, 1008 (9th Cir. 1999) ("Michigan permits tort plaintiffs to sue defendants' *insurers* for fraudulent inducement without rescinding the settlement, but may not permit such suits against the defendants themselves;

-23-

defrauded tort defendants cannot sue plaintiffs for fraud without rescinding the settlement.") (internal citations omitted).

Permitting Cristini to pursue a separate cause of action against the insurers for fraud would not violate the election of remedies doctrine because there is no risk of double recovery. *See Riverview Co-op., Inc.*, 417 Mich. at 312-13, 337 N.W.2d at 226-27 (noting that the purpose of the election of remedies doctrine is to prevent double redress for a single injury); *Slotkin*, 614 F.2d at 312 (finding that a plaintiff that seeks to ratify a settlement agreement and pursue a separate cause of action for fraud does not create a risk of double recovery). "In any action based on fraud, the fact finder will simply measure the extent of the plaintiff's damages by examining what the agreement would have been, had the parties known the actual material facts." *DiSabatino v. U.S. Fid. & Guar. Co.*, 635 F. Supp. 350, 355 (D. Del. 1986). "In other words, the measure of damages is the 'loss of the bargain.'" *Ibid.* (quoting *Slotkin*, 614 F.2d at 313); *see also Turkish v. Kasenetz*, 964 F. Supp. 689, 696 (E.D.N.Y. 1997) ("Plaintiffs' injury is thus the loss suffered as a result of the alleged fraud, namely, the difference in value between a good faith settlement and a fraudulent settlement. In essence, plaintiffs are entitled to recover such amount as may 'make the settlement an honest one.'") (internal citations omitted).

The insurers also argue that Federal Rule of Civil Procedure Rule 60(b) provides Cristini with an adequate remedy for the alleged fraud. But the insurers provide no explanation as to why Rule 60(b) does so. Rule 60(b) says that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . or (6) any other reason that justifies relief." However, Cristini is not seeking relief from an order or judgment entered by this

-24-

Court.  He does not want to disturb the dismissal of his civil rights lawsuit against the Warren

defendants.  And his claim here does not depend on the merits of the underlying case.  He does not

contend, for example, that, absent the alleged fraud, he would have prevailed on the merits.  Instead,

Cristini contends that had full disclosure been made, he would have bargained for a larger

settlement.  Although the merits of the underlying action are relevant, the issue is different: whether

the settlement value of the case would have been higher absent the fraud and, if so, by how much.

*See Cresswell v. Sullivan & Cromwell*, 668 F. Supp. 166, 169 (S.D.N.Y. 1987); *see also Matsuura*

*v. Alston & Bird*, 166 F.3d 1006, 1008 (9th Cir. 1999) ("damages for fraud are conceptually different

from damages for the underlying tort claims"); *DiSabatino v. U.S. Fid. & Guar. Co.*, 635 F. Supp.

350, 356-57 (D. Del. 1986) ("The alleged tort is relevant only to the extent of determining the

plaintiffs' damages from the fraud because the tort concerns the value of the right of action which

the plaintiffs compromised.").

The Rule 60(b) remedies present no obstacle to a fraud action against third-party insurers for

settlement fraud.  *Cresswell*, 668 F. Supp. at 170.  As the *Creswell* court explained:

> [A]ssume that the action under Rule 60(b) would be the only relief against fraud in
> connection with the settlement, . . . thus allowing for no damages based on the
> alleged settlement fraud.  This would be an outrageous result.  Although the plaintiffs
> could presumably go to trial or get a greater settlement . . . , they would have no
> claim for actual or punitive damages for an act determined by the court to be
> fraudulent.  The drafters of the Federal Rules clearly could not have intended this
> deprivation of a state law substantive right.

668 F. Supp. at 172 n.3.  The same reasoning applies in this case.  And as a matter of public policy,

permitting a fraud action under different circumstances — that is, where the tortfeasor is likely

uncollectable and the insurance policy proceeds probably are the sole source of settlement funds —

-25-

discourages bad behavior by insurers.  The court in *DiSabatino v. U.S. Fidelity & Guaranty Company*, 635 F. Supp, 350 (D. Del. 1986), outlined the concerns well:

> Simply as a matter of policy, this cause of action should be deemed to exist.  First, insurance companies would have everything to gain and nothing to lose by systematically defrauding tort claimants into accepting low settlement offers.  In such cases the company gambles that the deceit will not be uncovered.  If the fraud is uncovered, then the company only faces litigation, or the costs of reimbursement, that it would have had to confront without a settlement.

*Id.* at 355.  To put a sharper point on it: "If the cheat can anticipate that the worst that can happen is that he shall be called upon to pay back his profit upon the trade, he may be encouraged to defraud."  *Cresswell*, 668 F. Supp. at 171 (quoting C. McCormick, Handbook on the Law of Damages, § 121, at 453 (1935)).

The election of remedies rule would not bar Cristini's fraud claims.

### G.  Third-party practice

USFIC argues that Cristini's third-party complaint violates Rule 14(a)(1) because USFIC does not fit the definition of a third-party defendant.  USFIC is technically correct.  Rule 14 permits a defendant to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. Pro. 14(a)(1).  But USFIC's argument ignores the broader procedural realities in this case.

On February 12, 2014, Cristini filed a counter-claim against Arrowood under Federal Rules of Civil Procedure 13.  That Rule provides that a defendant may join additional persons to a counterclaim under Rules 19 and 20 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 13(h).  Rule 20 allows joinder of any person as a defendant if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and the claims share "any question of law or

fact common to all defendants." Fed. R. Civ. Pro. 20(a)(2)(A) & (B).  Cristini seeks a judgment against Arrowood and USFIC "jointly and severally" for fraudulent activity arising from the same transaction or occurrence: the scheme to defraud Cristini into settling his civil rights claims for an amount substantially less than their value.  Cristini properly joined USFIC as an additional defendant under Rule 20, although perhaps the designation "third-party defendant" should not have been used.  Nonetheless, dismissal on this ground is not appropriate.

III.

Although many of the arguments offered by the insurer defendants lack merit, there are critical defects in Cristini's claims sounding in fraud and negligent misrepresentation.  The most difficult obstacle is whether Cristini can plausibly allege reasonable reliance under the circumstances set out in the pleadings.  Because the Court concludes that he cannot, the motions to dismiss will be granted.

Accordingly, it is **ORDERED** that the motions to dismiss by counter-defendant Arrowood Indemnity Company and third-party defendant U.S. Fire Insurance Company [dkt. #54, 58] are **GRANTED**.

It is further **ORDERED** that Michael Cristini's counter and third-party complaint is **DISMISSED WITH PREJUDICE**, and the case is **CLOSED**.

It is further **ORDERED** that the parties' discovery motions [dkt. #78, 81, 82] are **DISMISSED as moot**.

s/David M. Lawson
DAVID M. LAWSON
Dated:  January 5, 2015                United States District Judge

-27-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 5, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI